**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ARTHUR HUNTER, individually and on behalf of all others similarly situated, | * | CIVIL ACTION NO. |
| v. | * | |
| UTZ BRANDS, INC. | * | |

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Arthur Hunter ("Plaintiff"), by and through his undersigned counsel, brings this class action complaint against Defendant Utz Brands, Inc. ("Utz" or "Defendant") alleging deceptive and unfair labeling, marketing, and sale of adulterated avocado oil products. Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to those allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## INTRODUCTION

Utz has systematically deceived American consumers by marketing and selling potato chip products labeled as containing pure avocado oil when, in fact, the products contain substantially adulterated oils. The oils have been contaminated with cheaper substitute oils or have oxidized into rancid, health-compromising products.

This deception is particularly egregious because Defendant launched its aggressive avocado oil marketing campaign in October 2020, mere months after a peer-reviewed 2020 UC Davis study documented that 82 percent of commercial avocado oil sold in the United States was either rancid or adulterated. Defendant knew, or should have known, of this widespread industry problem and yet proceeded to market its products as "better-for-you" alternatives with premium pricing that exploited consumer trust.

In July 2026, a new UC Davis study in the peer-reviewed journal Applied Food Research found that 89 percent of processed foods tested, including Boulder Canyon avocado oil chips, contained adulterated oils inconsistent with their labeling. Boulder Canyon's products specifically failed this independent testing, confirming what consumers feared: they were sold a lie.

As recently as January 2026, Utz continued to make false claims in national advertising, stating "You can always count on the real taste of Boulder Canyon. Cut from real potatoes, crafted with avocado oil." The advertisement further displayed prominent imagery stating "Real Ingredients. Real Flavor. Real Standards." These claims were demonstrably false. Subsequent UC Davis testing would show within months that Boulder Canyon's avocado oil chips contained adulterated, non-authentic oils. Utz knew, or acted with reckless disregard regarding, the falsity of these statements.

The representation at the center of this action appears on Defendant's Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips and on Defendant's other avocado oil labeled snack products (collectively, the "Products"). The words "Avocado Oil" appear on the front of every package of the Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips as part of the product's own name (the "Avocado Oil Representation"). That representation is reinforced, and not qualified, by the ingredient statement on the back label, which declares exactly three ingredients: "Potatoes, Avocado Oil, Sea Salt." The label declares no other oil, no oil blend, and no "and/or" oil statement.

What Defendant has done is economic adulteration. Defendant has either substituted the avocado oil its labeling promises with cheaper refined vegetable and seed oils, or diluted that avocado oil with them, while continuing to charge consumers the premium that the named oil commands. Plaintiff and the Class paid for one thing and received another.

## PARTIES

1. Plaintiff Arthur Hunter is a natural person and citizen of the State of Louisiana who, at all material times, purchased Boulder Canyon avocado oil-labeled potato chips in New Orleans, Louisiana.

2. Defendant Utz Brands, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business in Hanover, Pennsylvania. Utz is a publicly traded company that manufactures, markets, and distributes a portfolio of salty snack brands from manufacturing facilities located throughout the United States, and sells those brands nationwide, including throughout Louisiana. Utz itself identifies Boulder Canyon as one of its own brands. In its September 29, 2023 press release announcing network optimization initiatives, Utz described itself as manufacturing a diverse portfolio of savory snacks through popular brands including Utz, On The Border, Golden Flake, Zapp's, Good Health, Boulder Canyon, Hawaiian Brand, and TORTIYAHS!.[1] Boulder Canyon is the brand under which Utz sells the Products at issue in this action. In the same release, Utz stated that its products are distributed nationally through the grocery, mass merchandiser, club, convenience, drug, and other channels.[2] Utz's Boulder Canyon products are accordingly distributed nationwide through major retailers, including Costco, which operates locations in New Orleans and throughout Louisiana.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (a) minimal diversity exists as Plaintiff is a Louisiana citizen and Defendant is a Delaware corporation with its principal place of

---

[1] Utz Brands, Inc., Utz Brands, Inc. Announces Network Optimization Initiatives to Support Volume Growth and Reduce Costs (Sept. 29, 2023), https://investors.utzsnacks.com/news/news-details/2023/Utz-Brands-Inc.-Announces-Network-Optimization-Initiatives-to-Support-Volume-Growth-and-Reduce-Costs/default.aspx.

[2] Id.

business in Pennsylvania; (b) the proposed class consists of more than 100 members; and (c) the aggregate claims of all members of the proposed Class exceed $5,000,000, exclusive of interest and costs. At least one Class member is a citizen of a state different from Defendant.

4. This Court has personal jurisdiction over Defendant. Defendant purposefully availed itself of the benefits of this District by marketing, distributing, and selling the Products to consumers in Louisiana, including to Plaintiff in New Orleans, Louisiana. Defendant purposefully directs its products into Louisiana through an established distribution network and through national and regional retailers that operate stores in this District. Defendant states publicly that its products are distributed nationally through the grocery, mass merchandiser, club, convenience, drug, and other channels[3], and Plaintiff purchased the Product through precisely that club channel, at a Costco warehouse in New Orleans. Defendant derives substantial revenue from the sale of its products to Louisiana consumers. Defendant likewise directed its national advertising, including the January 2026 campaign described below, at consumers in Louisiana. In addition, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in Louisiana, including through retailers such as Costco that sell Defendant's products to Louisiana consumers, and because the harm was sustained in Louisiana.

## FACTUAL BACKGROUND

### A. Defendant's Aggressive Marketing Campaign and Product Launch

6. In October 2020, Utz launched the Boulder Canyon "Thin & Crispy" line of avocado oil potato chips, positioning the brand as a leader in "better-for-you" snack foods. This

[3] Utz Brands, Inc., supra note 1.

launch occurred at a premium price point, significantly above standard potato chip prices.

7. In its October 16, 2020 press release distributed through Business Wire, Utz called Boulder Canyon the "leader of potato chips cooked in better-for-you oils" and expressly marketed the new Thin & Crispy chips as cooked in avocado oil.[4] The release did not describe the brand generally. It identified one specific product, the Boulder Canyon Avocado Oil Sea Salt Potato Chip, as the number one potato chip SKU in the natural channel, citing SPINS data for the 52 weeks ending September 6, 2020. Utz thus told the market that its single best selling potato chip was an avocado oil product, and attributed the brand's success to the better-for-you oils in which its chips were cooked. The release was issued in the name of Utz Brands, Inc. and quoted Utz's Vice President of Marketing, Craft and BFY Brands.

8. The same press release confirms that Utz has long known that the oils used across the Boulder Canyon line differ from one another, and that consumers care which oil they are getting. Utz stated that Boulder Canyon offered more than thirty potato chip varieties cooked in specialty oils including avocado oil, olive oil, and sunflower oil or safflower oil. Utz has therefore understood since at least October 2020 that the identity of the frying oil is a material point of differentiation among its own products, and Utz has promoted that differentiation to consumers as a selling point.

9. Utz manufactures and sells multiple varieties of Boulder Canyon potato chips and snack products that are labeled as containing avocado oil as the sole or primary cooking oil. These products carry labels stating "Made with Avocado Oil," "Cooked in Avocado

---

[4] BusinessWire, BOULDER CANYON Debuts New Thin & Crispy Potato Chips Made With Avocado Oil! (Oct. 16, 2020), https://www.businesswire.com/news/home/20201016005396/en/BOULDER-CANYON-Debuts-New-Thin-Crispy-Potato-Chips-Made-With-Avocado-Oil.

Oil," or similar representations, all designed to communicate that avocado oil is the primary ingredient used in cooking.

10. Defendant promotes Boulder Canyon as America's fastest growing salty snack brand and as the number one salty snack brand in the natural channel.[5]

11. Defendant markets the Boulder Canyon brand to consumers as a line of snacks made with "premium oils" and real, simple ingredients, rather than with the refined seed oils used in conventional snack foods. Defendant's brand messaging, under the banners "Live Better. Eat Boulder." and "Crafted Simply. Enjoyed Boldly.," tells consumers that real food does not need a long ingredient list, that every Boulder Canyon chip is rooted in simplicity, and that the brand is guided by craft, care, integrity, and time honored cooking methods.

12. In other words, Defendant holds the Boulder Canyon brand out as a healthier, premium snack product, and consumers such as Plaintiff and Class members pay for and expect that level of quality. Defendant's premium oil messaging is not incidental to the brand. It is the brand.

**B. Deceptive Labeling and Representation of Oil Composition**

13. The labels on Defendant's avocado oil products represent that avocado oil is the sole or substantially predominant cooking oil used to prepare the chips. On many products, avocado oil is listed as the only oil ingredient.

14. Defendant deliberately emphasizes avocado oil in its product marketing and packaging. Defendant has capitalized on consumer perception that avocado oil is a premium, health-conscious choice, particularly because avocado oil contains monounsaturated fatty acids associated with cardiovascular health benefits.

[5] BusinessWire, Utz Brands Showcases New Chips, Pretzels and Bestsellers at Natural Products Expo West (Feb. 27, 2026), https://www.businesswire.com/news/home/20260227548219/en/Utz-Brands-Showcases-New-Chips-Pretzels-and-Bestsellers-at-Natural-Products-Expo-West.

15. Avocado oil is a premium product that commands a substantially higher price than conventional vegetable oils, such as soybean, sunflower, and safflower oils. Plaintiff purchased Boulder Canyon avocado oil chips for $18.69 per unit at Costco, approximately 2-3 times the price of standard potato chips using conventional oils. This premium pricing would be unjustifiable if the chips did not actually contain avocado oil as advertised.

16. On January 8, 2026, Utz launched Boulder Canyon's first national brand campaign, called "Be for Real," created in partnership with The Sasha Group. Utz announced that the campaign would be showcased on social media, in online video, and at the places where consumers shop, and that it celebrated Boulder Canyon's top selling items, including the Avocado Oil Sea Salt Kettle chips, together with what Utz described as the brand's commitment to real, simple ingredients, which Utz identified as potatoes grown in North America, avocado oil, and sea salt. Utz's Senior Vice President of Marketing stated that the campaign was a natural extension of the brand and that Utz had stayed true to using only select ingredients for more than thirty years.[6]

17. The "Be for Real" campaign was, in substance, an authenticity campaign. Utz built a national advertising program around the premise that Boulder Canyon does not take shortcuts and that what the label promises is what the consumer receives. Utz launched that campaign in January 2026, at a time when the adulteration of avocado oil sold in the United States had been documented in the peer reviewed literature for more than five years, and approximately six months before the UC Davis researchers reported that

[6] BusinessWire, Boulder Canyon Launches "Be for Real" Campaign Celebrating Real Ingredients and Real Moments (Jan. 8, 2026), https://www.businesswire.com/news/home/20260108869023/en/; see also Boulder Canyon Foods, Facebook (video, 0:19), https://www.facebook.com/BoulderCanyonFoods/videos/879469001737789/ (closing frame at 0:18); Boulder Canyon, https://bouldercanyon.com/.

both tested lots of Boulder Canyon's avocado oil chips were compositionally inconsistent with authentic avocado oil.

18. In January 2026, Utz ran national advertising campaigns for Boulder Canyon featuring the tagline "You can always count on the real taste of Boulder Canyon. Cut from real potatoes, crafted with avocado oil." The advertisements further displayed prominent imagery stating "Real Ingredients. Real Flavor. Real Standards." These messages were calculated to reinforce consumer confidence in Boulder Canyon's products and to justify premium pricing based on purported authenticity and quality standards.

19. The emphasis on "REAL" ingredients, "REAL" flavor, and "REAL" standards in the January 2026 advertising was particularly deceptive. These claims conveyed that Boulder Canyon's products met rigorous quality standards and contained authentic, unadulterated ingredients. In reality, as subsequent UC Davis testing would confirm within months, Boulder Canyon's products contained adulterated oils wholly inconsistent with these representations. The "Real Standards" claim was demonstrably false.

20. The campaign placed that claim directly next to the Product itself. In a nineteen second video advertisement published on Boulder Canyon's official Facebook page, the closing frame displays the "Be for Real" brand lockup above three Boulder Canyon packages. The Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips is positioned in the center of the frame, with its front panel legible and the words "AVOCADO OIL" displayed in large type. Immediately beneath the packages, in large capital letters, the frame reads: "REAL INGREDIENTS. REAL FLAVOR. REAL STANDARDS." A true and correct copy of that closing frame is attached as Exhibit B.

21. The juxtaposition was deliberate and it is damning. Utz did not make a general claim about corporate values. It displayed the Product, showed consumers the words

"Avocado Oil" on the Product's own package, and told them in the same frame that the Product was made with real ingredients and met real standards. The oil in that package was not compositionally consistent with authentic avocado oil in either lot the UC Davis researchers tested.

22. The Avocado Oil Representation is not a peripheral or fine print claim. The words "Avocado Oil" are part of the product's name. They appear on the front of the package, in large type, above the flavor designation, and in the same manner on every package. Defendant uses those words to distinguish the avocado oil Products from the Boulder Canyon chips that are made with other, cheaper oils, because those other products do not name the oil on the front of the package at all.

23. The contrast is deliberate, and it is meaningful. On Boulder Canyon Honey Barbeque Kettle Style Potato Chips, Defendant discloses an oil blend in the ingredient statement, listing "Sunflower Oil And/Or Safflower Oil," and says nothing about the oil on the front of the package. On the Products, by contrast, Defendant names avocado oil on the front of the package and then declares "Potatoes, Avocado Oil, Sea Salt," and nothing more, on the back. Defendant plainly knows how to disclose an oil blend to consumers, and knows how to use an "and/or" oil statement when it uses more than one oil. Defendant did neither here.

24. A reasonable consumer who reads "Avocado Oil" on the front of the package, and who then finds "Avocado Oil," and only "Avocado Oil," on a three ingredient statement, reasonably understands that the oil in the product is avocado oil. That is the only understanding the label permits.

25. Defendant reinforces that understanding on the back of the package and on its website. The back panel of the Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips asks consumers why avocado oil, and answers that it delivers a smooth, buttery

taste and a big crunch. Defendant's product page describes the same product as made with just three natural ingredients, potatoes, avocado oil, and sea salt, and invites consumers seeking a pure, natural indulgence to buy it.

26. Defendant does not disclose anywhere on the packaging of the Products, or anywhere else, that the oil in the Products is not avocado oil, or that the oil in the Products is blended, diluted, or substituted with cheaper vegetable or seed oils. Consumers therefore reasonably believe that the oil used to make the Products is avocado oil.

27. At bottom, Defendant has engaged in economic adulteration. Defendant has misled consumers into believing that they are purchasing a product made only with high quality avocado oil, and has charged them accordingly. Defendant's Avocado Oil Representation is therefore actionable.

**C. The Avocado Oil Representation Is Material to Consumers**

28. The Avocado Oil Representation is material. It is important to consumers with respect to their decision to purchase the Products, and Defendant knows it.

29. Avocado oil is widely understood to be one of the healthiest food oils. Published research has indicated that compounds in avocado oil may help protect the liver, may lower blood pressure and LDL cholesterol, and may reduce osteoarthritis related joint pain, post meal blood sugar, and total cholesterol levels. Avocado oil is high in monounsaturated fat, which is generally considered more heart healthy than saturated fat, and it is somewhat more stable than the polyunsaturated fats typically found in conventional vegetable oils. Avocado oil is also in high demand because it has the highest smoke point of the plant based food oils, which makes it more desirable for high heat applications such as frying.[7]

---

[7] See Healthline, Evidence-Based Health Benefits of Avocado Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits; MasterClass, What Is Avocado Oil? A Guide to Cooking With Avocado Oil, https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil.

30. Each of these qualities, among others, motivates consumers to pay a premium price for products made with avocado oil as compared with products made with other food oils such as canola, corn, peanut, safflower, soybean, and sunflower oil.

31. Materiality does not depend on whether a given consumer believes avocado oil is superior to other oils. Whether the oil in a food product is the oil the label says it is, rather than a cheaper oil substituted for it, is material to reasonable consumers standing alone. Consumers may be allergic to, or may have religious, dietary, medical, or other reasons for not consuming, particular oils. Consumers of the Products reasonably expect to know what type of oil they are eating.

32. The UC Davis researchers made the same observation about front of package oil claims. They found that consumers may reasonably read such claims as signals of meaningful product differentiation, and that because every product they studied declared only a single edible oil in the ingredient statement and did not disclose any blended oil formulation, consumers would reasonably expect the named oil to be the primary lipid source of the product, particularly where the claim is emphasized on the front of the package.

33. Consumers purchased, and continue to purchase, the Products in part because the Avocado Oil Representation conveys the unequivocal message that the Products are made with avocado oil. Plaintiff and Class members would have paid less for the Products, or would not have purchased them at all, if not for the Avocado Oil Representation. Plaintiff and Class members have therefore suffered a financial injury in the form of the price premium that the Products command in the market as a result of Defendant's representation that they are made with avocado oil.

**D. The July 2026 UC Davis Study: Scientific Evidence of Adulteration**

34. In July 2026, food scientists at the University of California, Davis, published a peer-reviewed study in the journal Applied Food Research documenting widespread adulteration of avocado oil in processed foods, including Boulder Canyon products.

35. The study, Authenticity of avocado and olive oils used as ingredients in commercially processed foods,[8] reported the results of the first systematic study of whether the avocado oil and olive oil used as ingredients in commercially processed foods are authentic.

36. The researchers selected commercially processed foods in three categories, chips, mayonnaise, and salad dressings, based on consumer popularity and market availability. Critically, the researchers included only products that declared a single oil in the ingredient statement and that did not list any additional edible oils. Boulder Canyon's Avocado Oil Classic Sea Salt Kettle Style Potato Chips satisfied that criterion and was included in the study.

37. The researchers analyzed 74 samples, representing 37 distinct commercial products, each of which was collected in two separate production lots. In the product information accompanying the study, Boulder Canyon's Avocado Oil Classic Sea Salt Kettle Style Potato Chips is identified as Sample Nos. 1 and 2.[9] Samples were purchased in 2025 and 2026 from online sources and from retail stores in California and were stored unopened in the laboratory until analysis. Boulder Canyon's product was therefore subjected to analyses drawn from two independent production lots.

38. The UC Davis study employed rigorous analytical chemistry methods to detect oil authenticity, specifically measuring fatty acid and sterol profiles. These chemical

---

[8] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389; see also https://www.sciencedirect.com/science/article/pii/S2772502226007274.

[9] UC Davis, Studied Products AFRES, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

"fingerprints" distinguish pure avocado oil from cheaper substitutes such as soybean oil, sunflower oil, and safflower oil.

39. The researchers classified samples by comparing the measured fatty acid and sterol profiles against the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981)[10]. Those standards are themselves designed to encompass the expected natural variability of fatty acid and sterol composition in oil.

40. The study's classification criteria were deliberately conservative and generous to the products tested. To account for analytical uncertainty, biological variability, and potential processing influences, the researchers tolerated minor deviations. A deviation limited to a single fatty acid or sterol marker, and not exceeding 10 percent beyond the established compositional limits, was not treated as sufficient to classify a sample as inconsistent, and such samples were considered consistent. A sample was treated as merely borderline, and not inconsistent, where no more than two markers marginally exceeded that same 10 percent allowance without concordant deviations elsewhere. Where a sample was fully consistent in either fatty acids or sterols and borderline in the other, it was considered consistent with authentic oil. Only samples showing multiple deviations, or patterns inconsistent with authentic reference profiles, were classified as inconsistent.[11]

41. Critically, the UC Davis researchers specifically tested whether food processing, such as frying, heating, blending, and chemical treatment, could explain differences in oil composition. They controlled for processing variables and concluded that processing

[10] Codex Alimentarius, Standard for Named Vegetable Oils, CXS 210-1999; Codex Alimentarius, Standard for Olive Oils and Olive Pomace Oils, CXS 33-1981.
[11] Lopez-Alvarez, et al., supra note 8.

alone could not account for the dramatic chemical differences observed in the tested products.

42. The results were devastating for avocado oil manufacturers: 48 of the 54 avocado oil-labeled processed foods tested, 89 percent, exhibited compositional patterns inconsistent with authentic avocado oil, indicating that the products had been substituted or diluted with cheaper oils. The study identified specific brand-name products that failed testing.

43. Significantly, Boulder Canyon avocado oil potato chips were specifically named in the UC Davis study as one of the products tested. Moreover, of the 28 avocado oil labeled chip samples the researchers tested, 26, or 93 percent, were classified as inconsistent with authentic avocado oil. Boulder Canyon chips failed the authenticity test, confirming they do not contain pure avocado oil as advertised.

44. Boulder Canyon's Avocado Oil Classic Sea Salt Kettle Style Potato Chips failed under those forgiving criteria anyway, and it failed twice. Neither of the two lot samples was found to be compositionally consistent with authentic avocado oil. Both lot samples were classified as inconsistent. The failure was not a single marginal marker in a single lot; it was a pattern, replicated across two independent production lots, under criteria designed to give the product every benefit of the doubt.

45. Principal component analysis of the fatty acid and sterol profiles demonstrated clear separation between the samples classified as consistent with their labeled oil claims and those classified as inconsistent. Many of the avocado oil labeled samples clustered near a vegetable oil comparator sample containing canola, corn, soybean, and sunflower oil, which indicates that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil.

46. In short, the oil in Defendant's Products is not avocado oil, or at a minimum is not fully avocado oil. It bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace, including the very sunflower and safflower oils that Defendant itself uses, and discloses, in Boulder Canyon's conventional chips.

47. As a comparative measure of the study's rigor and validity, the UC Davis researchers tested 20 olive oil-labeled products for comparison. Only 1 of 20 olive oil products failed authenticity testing (95 percent pass rate). This stark contrast demonstrates the pervasiveness of adulteration in the avocado oil category and validates the UC Davis testing methodology.

48. The UC Davis study concluded that many food companies may not know they are purchasing and using adulterated oils, but it explicitly identified "fraudulent labeling" as a significant driver of the problem. Companies knowingly mislabel products to capitalize on consumer preference for premium oils.

**E. The Frying Process Does Not Explain the Compositional Inconsistency**

49. The UC Davis researchers anticipated and tested the obvious defense, that the compositional deviations they observed might be an artifact of cooking rather than evidence of what oil went into the product, and they refuted it experimentally.

50. The researchers prepared model products in the laboratory using retail avocado oils that they employed as reference oils, and whose pre frying fatty acid and sterol profiles fell within every applicable Codex range. They then fried those model products under typical conditions and re measured the profiles.

51. The results were unambiguous. For avocado oil subjected to frying, the absolute changes in the major fatty acids were less than 0.6 percent. Cis vaccenic acid, the key discriminatory marker for avocado oil authenticity, decreased by only 0.1 percent following frying, in both potato chips and tortilla chips. The model product experiments

therefore establish that typical frying and emulsification conditions do not substantially alter oil authenticity markers.

52. The magnitude of the deviations found in Defendant's Products cannot be explained by frying, by processing, by storage, or by natural variation. It is explained by the fact that the Products are not made with avocado oil, or not made exclusively with avocado oil, as Defendant represents.

**F. National Media Coverage Providing Notice of Defendant's Fraud**

53. On August 9, 2026, The Dallas Express, a major national media publication, published a comprehensive report on the UC Davis findings titled "Are Consumers Being Duped by 'Avocado Oil' Labels On Healthier Snacks?" Drawing on the study's media kit, the article specifically identified Boulder Canyon avocado oil kettle chips among the brands whose tested lots were inconsistent with pure avocado oil.[12]

54. The Dallas Express article reported that consumers "pay premiums of more than 500 percent" for products marketed as made with avocado oil compared with conventional oil versions. This media coverage provided nationwide, publicly-accessible notice that Boulder Canyon's products were adulterated and that consumers had been paying massive premiums for fraudulent products.

55. The Dallas Express article quoted UC Davis researcher Selina Wang, who stated: "Consumers are increasingly paying a premium for products made with avocado oil or olive oil. They deserve to get what they pay for and food manufacturers deserve confidence that the ingredients they purchase from suppliers are authentic."[13] This

[12] Tiffany Chartier, Are Consumers Being Duped by "Avocado Oil" Labels On Healthier Snacks?, The Dallas Express (Aug. 9, 2026), https://dallasexpress.com/health/are-consumers-being-duped-by-avocado-oil-labels-on-healthier-snacks/.

[13] UC Davis, The Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil, https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil; Chartier, supra note 12.

expert statement, published in a major national news outlet, underscored the falsity of Defendant's claims and the unfairness to consumers.

56. The August 9, 2026 national media publication of the Boulder Canyon Products' failure demonstrates that Defendant's fraud was not a mere supply-chain accident or isolated incident. Rather, it was part of a systematic, nationwide scheme to defraud consumers. The timing of this media coverage, occurring mere weeks after Plaintiff's July 22, 2026 purchase and weeks before the filing of this Complaint, evidences the widespread, persistent, and obvious nature of Defendant's deceptive conduct.

**G. Prior Studies Demonstrating Defendant's Knowledge of Adulteration**

57. The July 2026 UC Davis study is not the first to identify rampant adulteration of commercial avocado oil. In June 2020, UC Davis researcher Selina Wang published a landmark peer-reviewed study in Food Control documenting that 82 percent of commercial avocado oil samples tested were either rancid/oxidized or adulterated with cheaper oils. The 2020 study was published through peer-reviewed academic channels, received press coverage, and was disseminated to industry participants.[14]

58. These prior findings, published in June 2020, demonstrate that Defendant had actual or constructive knowledge of widespread avocado oil adulteration when it launched its aggressive "better-for-you" marketing campaign in October 2020. The timing of Boulder Canyon's product launch, immediately following the publication of the 2020 UC Davis study showing 82 percent adulteration, suggests either knowing exploitation of industry knowledge or reckless disregard for consumer welfare.

59. The fact that Defendant continued to run aggressive national advertising campaigns as recently as January 2026, emphasizing "Real Ingredients," "Real Flavor," and "Real Standards," demonstrates Defendant's persistent course of deceptive conduct. This

[14] Hilary S. Green & Selina C. Wang, First report on quality and purity evaluations of avocado oil sold in the US, Food Control (2020), https://www.sciencedirect.com/science/article/pii/S0956713520302449.

January 2026 advertising occurred well within Defendant's knowledge of the adulteration problem, yet Defendant made affirmative, emphatic claims about authenticity and quality that were designed to reassure consumers and justify premium pricing.

60. A subsequent UC Davis study found that 70 percent of private label avocado oils sold in retail channels were rancid or adulterated.[15] The accumulation of scientific evidence documenting this problem was substantial and accessible to food manufacturers.

61. The published record on avocado oil adulteration is neither obscure nor recent. See Hilary S. Green & Selina C. Wang, First report on quality and purity evaluations of avocado oil sold in the US, Food Control (2020); Hilary S. Green & Selina C. Wang, Purity and quality of private labelled avocado oil, Food Control (2023); UC Davis, Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils (2023). Each was published through peer reviewed or institutional channels, received press coverage, and was disseminated to industry participants.

62. Defendant is a sophisticated, publicly traded commercial food manufacturer. Defendant sources, formulates, manufactures, labels, and markets the Products. Defendant is aware, or reasonably should be aware, of the industry studies and trends described above, and is aware, or reasonably should be aware, of the well documented problem of adulteration in the avocado oil supply chain. Defendant knew or should have known that the Products do not contain avocado oil, or are diluted with other, cheaper oils, and Defendant nevertheless continued to make the Avocado Oil Representation on every package it sold.

**H. Plaintiff's Purchase in Reliance on Defendant's Deceptive Representations**

---

[15] Hilary S. Green & Selina C. Wang, Purity and quality of private labelled avocado oil, Food Control (2023), https://www.sciencedirect.com/science/article/pii/S0956713523002372; Tiffany Dobbyn, Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils, UC Davis (2023), https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils.

63. Plaintiff has purchased Boulder Canyon avocado oil labeled potato chips on numerous occasions over the course of the Class Period, typically from the Costco Wholesale location nearest his home in New Orleans, Louisiana. Most recently, on July 22, 2026, at 5:06 PM, Plaintiff purchased Boulder Canyon avocado oil chips (Item #1851140) at Costco Wholesale #1147, located at 2900 Dublin Street, New Orleans, Louisiana 70118. The original receipt from that purchase (attached as Exhibit A) shows a purchase price of $18.69 for a single unit of Boulder Canyon Thin & Crispy avocado oil chips.

64. The $18.69 price point demonstrates that Plaintiff paid a substantial premium price for the avocado oil chips. This premium reflects the consumer market value attributed to authentic avocado oil, consistent with the 500 percent plus premium pricing cited in the Dallas Express article, and Plaintiff paid a comparable premium on each of his prior purchases of the Products. Plaintiff's purchase occurred months after Boulder Canyon's January 2026 advertising campaign featuring "Real Ingredients," "Real Flavor," and "Real Standards." These representations contributed to Plaintiff's belief in the authenticity and quality of the product.

65. Had Plaintiff known, on any of these occasions, that the chips contained adulterated or substitute oils, or that the "Real Standards" claim was false, he would not have purchased them at the premium price he paid, or would not have purchased them at all.

66. Plaintiff relied on the label and packaging representations that avocado oil was the primary or sole cooking oil. Plaintiff made his purchase decision based on the belief that he was purchasing a premium, health-conscious snack product cooked in authentic avocado oil, reinforced by Boulder Canyon's January 2026 claims about "Real Ingredients" and "Real Standards."

67. Plaintiff purchased the Product specifically because it was advertised as being made with avocado oil. He saw and read the words "Avocado Oil" on the front of the package

before buying it, and he reviewed the ingredient statement, which listed avocado oil as the only oil in the product. Plaintiff reasonably believed, based on the Avocado Oil Representation, that the oil used to make the Product was avocado oil, and he did not believe that the Product contained any other oil. Plaintiff took the Avocado Oil Representation into consideration when he decided to buy the Product.

68. As a longtime, repeat purchaser of the Products, Plaintiff will be unable to rely on the Avocado Oil Representation in the future. He cannot determine the true composition of the oil in the Products absent scientific testing, and he will therefore be unable to purchase the Products in the future, although he would like to. Plaintiff remains interested in purchasing snack products that are made with avocado oil, intends to purchase such products in the future, and would consider purchasing Defendant's Products again if Defendant ensured that the Avocado Oil Representation was accurate and truthful. Plaintiff accordingly faces an ongoing injury that damages alone will not remedy.

## CLASS ALLEGATIONS

69. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following class (the "Class"):

All persons or entities in the United States who purchased Boulder Canyon avocado oil-labeled potato chips or snack products on or after October 16, 2020 through the date of filing of this Complaint. Excluded from the Class are Defendant, its affiliates, subsidiaries, employees, officers, and directors.

70. Plaintiff additionally brings this action on behalf of the following subclass (the "Louisiana Subclass"):

All persons or entities who purchased Boulder Canyon avocado oil labeled potato chips or snack products in the State of Louisiana on or after October 16, 2020 through the date of filing of this Complaint.

71. Also excluded from the Class and the Louisiana Subclass are: Defendant and its parents, subsidiaries, and affiliates, and any entity in which Defendant has a controlling interest; Defendant's officers, directors, and current or former employees; all individuals who make a timely election to be excluded from this proceeding using the correct opt out protocol; all judges assigned to hear any aspect of this litigation, together with their immediate family members; and any persons asserting claims for personal injury.

72. Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), each of the above class definitions is a placeholder that may be altered or amended at any time before final judgment. As a result of additional information obtained through further investigation and discovery, the Class and the Louisiana Subclass may be modified or narrowed as appropriate before the Court determines whether class certification is appropriate.

73. Numerosity. The Class is so numerous that joinder of all members would be impracticable. Based on Boulder Canyon's market dominance as the "#1 SKU in natural channel," national distribution through Costco and other major retailers, and nearly six years of sales (October 2020 through July 2026), the Class likely comprises hundreds of thousands, if not millions, of consumers. Given the 500 percent plus premium pricing on avocado oil products, the aggregate damages to the Class are substantial and likely exceed $100 million in actual damages, well above the $5 million CAFA threshold.

74. Commonality. Questions of law and fact common to the Class predominate over any questions affecting individual Class members. All Class members were exposed to identical or substantially similar labeling, marketing, and representations regarding avocado oil content, including the January 2026 "Real Ingredients. Real Flavor. Real

Standards" campaign. All suffered the same economic injury: overpayment for products that did not meet advertised specifications.

75. The common questions that will drive the resolution of this action, and that predominate over any questions affecting only individual Class members, include: (a) whether Defendant misrepresented material facts, or failed to disclose material facts, in connection with the packaging, marketing, distribution, and sale of the Products; (b) whether the oil used to make the Products is avocado oil; (c) whether the Avocado Oil Representation constituted false or deceptive advertising; (d) whether Defendant engaged in unfair, unlawful, or fraudulent business practices; (e) whether Defendant's conduct was intentional and knowing; (f) whether the Products commanded a price premium as a result of the Avocado Oil Representation, and if so in what amount; (g) whether Plaintiff and the Class are entitled to damages, restitution, or disgorgement, and if so in what amount; (h) whether Plaintiff and the Class are entitled to injunctive relief; (i) whether Plaintiff and the Class are entitled to statutory, treble, or punitive damages, and if so in what amount; and (j) whether Plaintiff and the Class are entitled to an award of reasonable attorney's fees, interest, and costs of suit.

76. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights that Plaintiff seeks to enforce uniformly on behalf of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by Class members flow, in each instance, from a common nucleus of operative fact, namely Defendant's deceptive packaging and advertising of the Products. Each Class member was exposed to the same deceptive practice, because the packaging of the Products bears the same material Avocado Oil Representation, and the Products do not meet that representation. Individual questions, if any, pale in comparison to the common questions presented.

77. Typicality. Plaintiff's claims are typical of those of the Class. Like many Class members, Plaintiff purchased Defendant's avocado oil-labeled products repeatedly and over an extended period, in reliance on representations that avocado oil was the primary cooking ingredient and that the products met "Real Standards." Like all Class members, Plaintiff paid a premium price and received adulterated or misrepresented products.

78. Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and has retained experienced class action counsel.

79. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual litigation by each Class member would be prohibitively expensive and would result in inconsistent judgments. Class adjudication promotes judicial efficiency and provides the sole practical means for Class members to vindicate their small individual claims.

80. Rule 23(b)(2). Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendant has acted, or failed to act, on grounds generally applicable to Plaintiff and the Class, which makes final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole and supports the imposition of uniform relief to ensure compatible standards of conduct toward Class members.

81. Ascertainability. Class members are identifiable and ascertainable through Defendant's records, retailer and distributor records, membership and loyalty program records maintained by retailers such as Costco, and other objective criteria, together with self identification by affidavit where appropriate.

## CAUSES OF ACTION

**COUNT I: BREACH OF EXPRESS WARRANTY**

82. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

83. By labeling its products "Made with Avocado Oil," "Cooked in Avocado Oil," or similar language, and by listing avocado oil as a sole or primary ingredient, Defendant made express warranties to consumers. These representations constituted affirmations of material fact regarding the identity and composition of the cooking oil used in the products.

84. The Avocado Oil Representation is (a) an affirmation of fact or promise made by Defendant to consumers that the Products are made with avocado oil; (b) a representation that became part of the basis of the bargain when Plaintiff and other consumers relied on it in deciding to purchase the Products; and (c) the creation of an express warranty that the Products would conform to that affirmation of fact or promise. In the alternative, the Avocado Oil Representation is a description of the goods that was made part of the basis of the bargain, and that created an express warranty that the Products would conform to that description.

85. Plaintiff and Class members reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to that warranty. These representations appeared on product labels, packaging, and marketing materials, including the January 2026 advertising featuring "Real Ingredients," "Real Flavor," and "Real Standards," and constituted the basis of the bargain between Defendant and consumers.

86. Defendant breached these express warranties because the products contain cooking oils that are adulterated, oxidized, or substituted with cheaper alternatives inconsistent with the labeling representation that avocado oil is the cooking medium.

87. Plaintiff and Class members were injured by Defendant's breach of express warranty. They paid premium prices for products that did not conform to Defendant's express representations regarding oil composition.

**COUNT II: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

88. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

89. Defendant is a merchant with respect to the sale of the Products, and a warranty of merchantability is therefore implied in every contract for their sale. Defendant, as a merchant, made an implied warranty of merchantability in connection with the sale of its avocado oil products pursuant to La. R.S. 9:2314.

90. The products are not fit for their ordinary purpose because they do not contain pure avocado oil as represented and promised. Products are not merchantable if they are adulterated or if their identity differs from what a reasonable consumer would expect based on labeling and representation.

91. The Products also fail to conform to the promises and affirmations of fact made on the container and label. The label states that the oil in the Products is avocado oil. The oil in the Products is not avocado oil, or is not exclusively avocado oil. Plaintiff and Class members therefore did not receive goods of the kind and quality that Defendant impliedly warranted.

92. Plaintiff and Class members were injured by this breach. They received products that do not conform to the implied warranty of merchantability.

**COUNT III: VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

93. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

94. Louisiana's Unfair Trade Practices and Consumer Protection Law, La. R.S. 9:3501 et seq. (the "UTPCPL"), prohibits unfair methods of competition and unfair or deceptive acts or practices in commerce.

95. Defendant's labeling and marketing of its avocado oil products violated the UTPCPL by: (a) representing that the products contained pure or primary avocado oil when they contained adulterated or substituted oils; (b) claiming the products met "Real Standards" when they demonstrably did not; (c) creating a false impression regarding the quality, origin, and composition of the products; and (d) omitting material facts about adulteration that a reasonable consumer would consider important in deciding whether to purchase.

96. Defendant's unfair and deceptive acts or practices were directed at consumers and affected the consumer decision-making process. The deceptive labeling, the "Real Ingredients. Real Flavor. Real Standards" advertising campaign, and premium pricing directly induced consumer purchases.

97. Under La. R.S. 9:3506, Plaintiff and Class members are entitled to recover actual damages, treble damages (three times the actual damages), reasonable attorney's fees, and litigation costs.

**COUNT IV: UNJUST ENRICHMENT**

98. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

99. Defendant has been unjustly enriched through its deceptive labeling, marketing, including the January 2026 "Real Standards" campaign, and sale of adulterated avocado oil products. Defendant obtained the benefit of premium pricing while delivering products that do not match their representation.

100. To the extent required by law, this cause of action is pleaded in the alternative to Plaintiff's legal claims, as permitted by Federal Rule of Civil Procedure 8(d)(2).

101. Plaintiff and Class members conferred a benefit upon Defendant by paying premium prices for products they believed to contain authentic avocado oil meeting "Real Standards." No such benefit was provided in return.

102. Plaintiff and Class members are entitled to disgorgement of the unjust profits obtained by Defendant through this deceptive scheme.

**COUNT V: FRAUDULENT AND NEGLIGENT MISREPRESENTATION**

103. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

104. Defendant made material representations in its labeling and marketing that avocado oil was the sole or primary cooking oil in its products and that the products met "Real Standards." These representations were false.

105. Defendant either knew that these representations were false, or acted with reckless disregard for their truth. Defendant had actual knowledge of the 2020 UC Davis study documenting 82 percent adulteration in the avocado oil marketplace. Yet Defendant launched its aggressive avocado oil marketing campaign in October 2020, within months of learning that the vast majority of avocado oil in commerce was adulterated or rancid. Furthermore, Defendant continued to make affirmative, emphatic claims about "Real Standards" in national advertising as recently as January 2026. Finally, national media coverage in The Dallas Express published in August 2026 explicitly identified the Boulder Canyon avocado oil chips as a failed product. Defendant's conduct constitutes at minimum reckless disregard; it more likely constitutes intentional fraud.

106. Defendant intended for consumers to rely on these representations, or at minimum, knew that consumers would foreseeably rely on them in making purchasing decisions.

107. Plaintiff and Class members reasonably relied on Defendant's representations that the products contained authentic avocado oil meeting "Real Standards." Plaintiff would not have purchased the products at the premium price if he had known they contained adulterated or substitute oils.

108. Plaintiff and Class members suffered damages as a result of their reliance on Defendant's misrepresentations. Plaintiff paid $18.69 for products he would not have purchased, or would have purchased at a significantly lower price, had he known the truth.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Arthur Hunter, on behalf of himself and all members of the Class, respectfully requests that this Court:

1. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3);
2. Appoint Plaintiff Arthur Hunter as representative of the Class and his counsel as Class Counsel;
3. Enter judgment against Defendant in favor of Plaintiff and the Class for all damages sustained, including but not limited to the premium price paid for adulterated products;
4. Enter a declaration that Defendant's actions, as described herein, violate the laws described herein;
5. Enter a finding in favor of Plaintiff and the Class against Defendant on all counts asserted herein;

6. Award Plaintiff and the Class restitution and other equitable relief, including without limitation restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class as a result of the unlawful, unfair, and deceptive business practices described herein;
7. Award nominal damages;
8. Award punitive damages, statutory damages, and monetary fines, consistent with permissible law and pursuant only to those causes of action so permitting;
9. Award treble damages pursuant to Louisiana's UTPCPL, La. R.S. 9:3506;
10. Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest rate permitted by law;
11. Award Plaintiff and the Class reasonable attorney's fees and litigation costs;
12. Award costs of administering the Class relief;
13. Impose an injunction requiring Defendant to: (a) cease all deceptive labeling and marketing of its avocado oil products; (b) disclose the true composition and identity of cooking oils used in its products; (c) implement third-party laboratory testing to verify avocado oil authenticity prior to sale; and (d) engage in corrective advertising to notify Class members of the adulteration;
14. Enter an order prohibiting Defendant from making the Avocado Oil Representation on the Products unless and until the Products are in fact made with avocado oil conforming to the applicable compositional criteria, including the criteria codified in the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999);
15. Award such other and further relief as this Court deems just, proper, and equitable under the circumstances.

Respectfully submitted by,

**DALY & BLACK**
***Attorneys for Plaintiffs***

*_/s/ Blake E. Corley_*

**BLAKE CORLEY SBN: 39848**
**DALY & BLACK, P.C.**
**400 Poydras Street | Suite 1900**
**New Orleans, LA 70130**
**Ph: 713.655.1405**
**Fax: 713.655.1587**
**clathrop@dalyblack.com**
**bcorley@dalyblack.com**
**www.dalyblack.com**