**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ARTHUR HUNTER, individually and on behalf of all others similarly situated, | * | CIVIL ACTION NO. 2:26-cv-01829 |
| | * | |
| Plaintiff, | * | JUDGE DARREL JAMES PAPILLION |
| v. | * | MAGISTRATE JUDGE EVA J. DOSSIER |
| UTZ BRANDS, INC., | * | CLASS ACTION |
| Defendant. | * | JURY TRIAL DEMANDED |

**FIRST SUPPLEMENTAL AND AMENDING COMPLAINT FOR CLASS ACTION DAMAGES**

NOW INTO COURT, through undersigned counsel, comes plaintiff, Arthur Hunter, individually and on behalf of those similarly situated, who, pursuant to Rules 15(a) and 15(d) of the Federal Rules of Civil Procedure, respectfully files this First Supplemental and Amending Complaint, which amends, supplements, and restates the original Complaint [Rec. Doc. 1] in its entirety and supersedes it as the operative pleading in this matter, and in support avers as follows:

**INTRODUCTION**

Utz Brands, Inc. has built the Boulder Canyon brand around a promise that its potato chips are cooked in avocado oil, telling consumers that the brand is made of "premium oils" and real, simple ingredients rather than the refined seed oils used in conventional snack foods. Defendant names avocado oil on the front of the package of the Boulder Canyon Avocado Oil Potato Chips, as part of the product's own name, and lists avocado oil as the only oil in the three-ingredient statement on the back label: "Potatoes, Avocado Oil, Sea Salt." In national advertising as recently as January 2026, Defendant told consumers that they could always count on "the real taste of

Boulder Canyon" because it is "Cut from real potatoes, crafted with avocado oil," accompanied by the words "Real Ingredients. Real Flavor. Real Standards."

In July 2026, the same University of California, Davis researchers who have studied avocado oil purity since 2020 published a new peer-reviewed study in the journal Applied Food Research.[1] This time, the researchers tested processed foods that use avocado oil as an ingredient, including potato chips, mayonnaise, and salad dressings. Boulder Canyon's Avocado Oil Potato Chips failed authenticity testing in both of the two independently collected production lots examined, a two-for-two failure rate, joining 25 of the other 27 avocado oil-labeled chip samples tested in the study, a 93 percent failure rate among chips alone, and 48 of the 54 avocado oil-labeled samples tested across every category, an 89 percent failure rate overall. By contrast, only 1 of 20 olive oil-labeled samples tested failed, a result that isolates the adulteration problem to avocado oil specifically and confirms the reliability of the testing.

The July 2026 study is not the first word on the subject. Defendant's Boulder Canyon avocado oil potato chips were already the top-selling potato chip SKU in the natural channel by September 2020, and Defendant continued and expanded its Boulder Canyon avocado oil marketing, including an October 2020 line extension, mere months after the same UC Davis research group published a landmark study finding that 82 percent of commercial avocado oil sold in the United States was rancid, oxidized, or adulterated with cheaper oils. A follow-up 2023 study found that nearly 70 percent of private-label avocado oil was similarly compromised. Defendant is a sophisticated, publicly traded food manufacturer that sources, formulates, manufactures, labels, and markets the Products nationwide, and Defendant knew, or reasonably should have

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

known, of this well-documented, persistent risk. Defendant nevertheless continued, through and including a national "Be for Real" advertising campaign launched in January 2026, to tell consumers that Boulder Canyon met "Real Standards" and to sell the Products under the unqualified "Avocado Oil" name. On August 9, 2026, weeks after Plaintiff's most recent purchase of the Products and weeks before the filing of this Complaint, The Dallas Express, a national media outlet, published a report drawing on the UC Davis study's own media kit that specifically identified Boulder Canyon's avocado oil chips among the failed products and quoted UC Davis researcher Selina Wang's observation that consumers who pay a premium for avocado oil "deserve to get what they pay for."[2]

The representation at the center of this action, "Avocado Oil," appears not only as part of the name of the Boulder Canyon Avocado Oil Potato Chips that Plaintiff purchased, but is reinforced by the back-label ingredient statement declaring exactly three ingredients, "Potatoes, Avocado Oil, Sea Salt," with no oil blend and no "and/or" oil statement of the kind Defendant uses on other Boulder Canyon products that are not made with avocado oil. What Defendant has done is economic adulteration: the avocado oil its labeling promises was substituted with, or diluted by, cheaper refined vegetable and seed oils, while Defendant continued to charge consumers a premium price, two to three times the price of comparable conventional-oil potato chips, including Defendant's own Boulder Canyon products cooked in other oils, for that "Avocado Oil" branding. Plaintiff and the Class paid a premium for one thing and received, or bore an undisclosed and material risk of receiving, another.

## PARTIES

[2] Tiffany Chartier, Are Consumers Being Duped by "Avocado Oil" Labels On Healthier Snacks?, The Dallas Express (Aug. 9, 2026), https://dallasexpress.com/health/are-consumers-being-duped-by-avocado-oil-labels-on-healthier-snacks/; UC Davis, The Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil, https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil.

1. Plaintiff Arthur Hunter is a natural person and citizen of the State of Louisiana who, at all material times, purchased Boulder Canyon avocado oil-labeled potato chips in New Orleans, Louisiana, including the Boulder Canyon Avocado Oil Potato Chips at issue in this action.

2. Defendant Utz Brands, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business in Hanover, Pennsylvania. Utz is a publicly traded company that manufactures, markets, and distributes a portfolio of savory snack brands, including Utz, On The Border, Golden Flake, Zapp's, Good Health, Boulder Canyon, Hawaiian Brand, and TORTIYAHS!, from manufacturing facilities located throughout the United States.[3] Boulder Canyon is the brand under which Defendant sells the Products at issue in this action. Defendant sells its products nationally, including throughout Louisiana, distributed through the grocery, mass merchandiser, club, convenience, drug, and other channels, including through Costco, which operates locations in New Orleans and throughout Louisiana.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Minimal diversity exists because Plaintiff is a citizen of Louisiana and Defendant is a citizen of Delaware, the State under whose laws it is incorporated, and of Pennsylvania, where its principal place of business is located; at least one member of the proposed Class is a citizen of a State different from Defendant. The proposed Class consists of more than 100 members, and the aggregate claims of all members of the proposed Class exceed $5,000,000, exclusive of interest and costs.

---

[3]Utz Brands, Inc., Utz Brands, Inc. Announces Network Optimization Initiatives to Support Volume Growth and Reduce Costs (Sept. 29, 2023), https://investors.utzsnacks.com/news/news-details/2023/Utz-Brands-Inc.-Announces-Network-Optimization-Initiatives-to-Support-Volume-Growth-and-Reduce-Costs/default.aspx.

4. This Court has personal jurisdiction over Defendant. Defendant purposefully availed itself of the benefits of this District by marketing, distributing, and selling the Products to consumers in Louisiana, including to Plaintiff in New Orleans, Louisiana. Defendant directs its products into Louisiana through an established distribution network and through national and regional retailers, including Costco, which operate stores in this District, and directed its national advertising, including the January 2026 "Be for Real" campaign described below, at consumers in Louisiana. Defendant derives substantial revenue from the sale of its products to Louisiana consumers. In addition, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant's dissemination of the labeling and marketing representations at issue to consumers in this District, Plaintiff's exposure to and reliance on those representations in this District, Plaintiff's purchases in this District, and the economic injury Plaintiff sustained in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District within the meaning of 28 U.S.C. § 1391(c)(2), as Defendant is subject to personal jurisdiction in this District with respect to this action.

## FACTUAL BACKGROUND

### A. Defendant's Aggressive Avocado Oil Marketing and Premium Positioning

6. In October 2020, Utz launched the Boulder Canyon "Thin & Crispy" line of avocado oil potato chips, positioning the brand as a leader in "better-for-you" snack foods, at a premium price point significantly above standard potato chip prices. In its October 16, 2020 press release, Utz called Boulder Canyon the "leader of potato chips cooked in better-for-you oils" and

identified the Boulder Canyon Avocado Oil Sea Salt Potato Chip as the number one potato chip SKU in the natural channel, citing SPINS data for the 52 weeks ending September 6, 2020.[4] Defendant thus told the market that its single best-selling potato chip was an avocado oil product, and attributed the brand's success to the better-for-you oils in which its chips were cooked.

7. That same press release confirms that Defendant has long known that the oils used across the Boulder Canyon line differ from one another, and that consumers care which oil they are getting: Defendant stated that Boulder Canyon offered more than thirty potato chip varieties cooked in specialty oils including avocado oil, olive oil, and sunflower oil or safflower oil. Defendant has therefore understood since at least October 2020 that the identity of the frying oil is a material point of differentiation among its own products and has promoted that differentiation to consumers as a selling point. Defendant manufactures and sells multiple varieties of Boulder Canyon products labeled "Made with Avocado Oil," "Cooked in Avocado Oil," or similar representations, all designed to communicate that avocado oil is the primary ingredient used in cooking.

8. Defendant promotes Boulder Canyon as America's fastest-growing salty snack brand and as the number one salty snack brand in the natural channel.[5] Defendant markets the Boulder Canyon brand to consumers as a line of snacks made with "premium oils" and real, simple ingredients rather than the refined seed oils used in conventional snack foods, under the banners "Live Better. Eat Boulder." and "Crafted Simply. Enjoyed Boldly." Defendant's premium-oil messaging is not incidental to the Boulder Canyon brand identity. It is the brand.

---

[4] BusinessWire, BOULDER CANYON Debuts New Thin & Crispy Potato Chips Made With Avocado Oil! (Oct. 16, 2020), https://www.businesswire.com/news/home/20201016005396/en/BOULDER-CANYON-Debuts-New-Thin-Crispy-Potato-Chips-Made-With-Avocado-Oil.

[5] BusinessWire, Utz Brands Showcases New Chips, Pretzels and Bestsellers at Natural Products Expo West (Feb. 27, 2026), https://www.businesswire.com/news/home/20260227548219/en/Utz-Brands-Showcases-New-Chips-Pretzels-and-Bestsellers-at-Natural-Products-Expo-West.

**B. The "Avocado Oil" Representation and Defendant's "Real Standards" Campaign**

9. The words "Avocado Oil" appear on the front of every package of the Boulder Canyon Avocado Oil Potato Chips as part of the product's own name (the "Avocado Oil Representation"). That representation is reinforced, and not qualified, by the ingredient statement on the back label, which declares exactly three ingredients: "Potatoes, Avocado Oil, Sea Salt." The label declares no other oil, no oil blend, and no "and/or" oil statement. The contrast with Defendant's own conventional products is deliberate: on Boulder Canyon Honey Barbeque Kettle Style Potato Chips, Defendant discloses an oil blend in the ingredient statement, listing "Sunflower Oil And/Or Safflower Oil," and says nothing about the oil on the front of that package. Defendant plainly knows how to disclose an oil blend to consumers and knows how to use an "and/or" oil statement when it uses more than one oil. Defendant did neither on the Products.

10. A reasonable consumer who reads "Avocado Oil" on the front of the package, and who then finds "Avocado Oil," and only "Avocado Oil," in a three-ingredient statement, reasonably understands that the oil in the product is avocado oil. Defendant reinforces that understanding on the back panel, which asks consumers, "why avocado oil" and answers that it delivers a smooth, buttery taste and a big crunch, and on Defendant's website, which describes the Product as made with just three natural ingredients and invites consumers seeking a pure, natural indulgence to buy it. Defendant does not disclose anywhere on the packaging of the Products, or anywhere else, that the oil in the Products is not avocado oil, or that it is blended, diluted, or substituted with cheaper vegetable or seed oils.

11. On January 8, 2026, Defendant launched Boulder Canyon's first national brand campaign, "Be for Real," created in partnership with The Sasha Group, which Defendant announced would be showcased on social media, in online video, and at the places where

consumers shop.[6] The campaign celebrated Boulder Canyon's top-selling items, including the Avocado Oil Sea Salt Kettle chips, together with what Defendant described as the brand's commitment to real, simple ingredients: potatoes grown in North America, avocado oil, and sea salt. Defendant ran national advertising under the tagline "You can always count on the real taste of Boulder Canyon. Cut from real potatoes, crafted with avocado oil," displaying prominent imagery stating "Real Ingredients. Real Flavor. Real Standards." In a nineteen-second video advertisement published on Boulder Canyon's official Facebook page, the closing frame displays the "Be for Real" brand lockup above three Boulder Canyon packages, with the Boulder Canyon Avocado Oil Potato Chips positioned in the center of the frame, its front panel legible with the words "AVOCADO OIL" in large type, immediately above the words "REAL INGREDIENTS. REAL FLAVOR. REAL STANDARDS." A true and correct copy of that closing frame is attached as Exhibit B.

12. Defendant did not make a general claim about corporate values. It displayed the Product, showed consumers the words "Avocado Oil" on the Product's own package, and told them in the same frame that the Product was made with real ingredients and met real standards. As detailed below, the oil in that package was not compositionally consistent with authentic avocado oil in either lot the UC Davis researchers tested. At bottom, Defendant has engaged in economic adulteration: Defendant has misled consumers into believing that they are purchasing a product made only with avocado oil and has charged them accordingly.

**C. The July 2026 UC Davis Study Found Defendant's Boulder Canyon Chips Adulterated**

[6] BusinessWire, Boulder Canyon Launches "Be for Real" Campaign Celebrating Real Ingredients and Real Moments (Jan. 8, 2026), https://www.businesswire.com/news/home/20260108869023/en/; Boulder Canyon Foods, Facebook (video, 0:19), https://www.facebook.com/BoulderCanyonFoods/videos/879469001737789/ (closing frame at 0:18).

13. In July 2026, the same UC Davis research group that published the 2020 and 2023 studies described below published a new peer-reviewed study in the journal Applied Food Research, this time examining processed foods that use avocado oil or olive oil as an ingredient rather than standalone bottled oil. The study, titled Authenticity of avocado and olive oils used as ingredients in commercially processed foods, was published online on July 11, 2026.[7] The researchers selected commercially available products across three categories, chips, mayonnaise, and salad dressings, based on consumer popularity and market availability, and included only products that declared a single oil in the ingredient statement with no additional edible oils listed. Boulder Canyon's Avocado Oil Potato Chips satisfied that criterion and was included in the study, identified in the product information accompanying the study as Sample Nos. 1 and 2.[8] Samples were purchased in 2025 and 2026 from online sources and from retail stores in California and were collected in two separate production lots.

14. The researchers analyzed 74 samples representing 37 distinct commercial products, measuring fatty acid and sterol profiles, chemical "fingerprints" that distinguish pure avocado oil from cheaper substitutes such as soybean, sunflower, and safflower oil, and comparing them against the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981).[9] The classification criteria were deliberately conservative and generous to the products tested: a deviation limited to a single marker, not exceeding 10 percent beyond the established compositional limits, was not treated as sufficient to classify a sample as inconsistent; a sample was treated as merely borderline where no

[7]Lopez-Alvarez et al., supra note 1.
[8]UC Davis, Studied Products AFRES, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.
[9]Codex Alimentarius, Standard for Named Vegetable Oils, CXS 210-1999; Codex Alimentarius, Standard for Olive Oils and Olive Pomace Oils, CXS 33-1981.

more than two markers marginally exceeded that allowance without concordant deviations elsewhere; and a sample fully consistent on one profile and merely borderline on the other was considered consistent with authentic oil. Only samples showing multiple deviations, or patterns inconsistent with authentic reference profiles, were classified as inconsistent.[10]

15. The researchers also tested whether ordinary food processing, including frying, could explain the deviations they observed. They prepared model chips using retail avocado oils with pre-frying profiles that fell within every applicable Codex range, then fried those model products and re-measured them. The changes attributable to frying were minor: absolute changes in the major fatty acids were less than 0.6 percent, and cis-vaccenic acid, a key discriminatory marker for avocado oil authenticity, decreased by only 0.1 percent following frying. The magnitude of the deviations found in Defendant's Products cannot be explained by frying, by processing, by storage, or by natural variation.

16. The results were stark: 48 of the 54 avocado oil-labeled samples tested, 89 percent, exhibited compositional patterns inconsistent with authentic avocado oil. Of the 28 avocado oil-labeled chip samples specifically, 26, or 93 percent, were classified as inconsistent with authentic avocado oil. By contrast, only 1 of 20 olive oil-labeled samples tested failed, a 95 percent pass rate, a result that both isolates the adulteration problem to the avocado oil category and validates the rigor of the UC Davis testing methodology.

17. Boulder Canyon's Avocado Oil Potato Chips failed under those forgiving criteria in both of the two independently collected production lots tested. The failure was not a single marginal marker in a single lot; it was a pattern, replicated across two independent production lots, under criteria designed to give the Product every benefit of the doubt. Principal component analysis

[10]Lopez-Alvarez et al., supra note 1.

of the fatty acid and sterol profiles demonstrated clear separation between samples classified as consistent and those classified as inconsistent, with many of the avocado oil-labeled samples clustering near a vegetable oil comparator sample containing canola, corn, soybean, and sunflower oil. In short, the oil in Defendant's Products is not avocado oil, or at a minimum is not fully avocado oil. It bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace, including the very sunflower and safflower oils that Defendant itself uses, and discloses, in Boulder Canyon's conventional chips. The UC Davis researchers observed that many food companies may not know they are purchasing and using adulterated oil, attributing much of the problem to a lack of accountability throughout the supply chain, where suppliers of adulterated oil may hide behind several layers of intermediaries; the researchers also identified fraudulent labeling as one driver of the broader problem. Whether Defendant's own conduct reflects that supply-chain failure, deliberate disregard of it, or both is addressed further below.

**D. National Media Coverage Confirmed the Findings and Provided Notice**

18. UC Davis's own published product list accompanying the study identifies the Boulder Canyon Avocado Oil Potato Chips, by name, as Sample Nos. 1 and 2 among the products classified as inconsistent with authentic avocado oil.[11] On August 9, 2026, The Dallas Express separately reported on the study's findings in an article titled "Are Consumers Being Duped by 'Avocado Oil' Labels On Healthier Snacks?," drawing on the study's media kit and secondary reporting identifying multiple failed brands, including Boulder Canyon.[12] The article reported that consumers "pay premiums of more than 500 percent" for products marketed as made with avocado oil generally, compared with conventional-oil versions, and quoted UC Davis researcher Selina

---

[12]Chartier, supra note 2.

Wang, who stated that consumers who pay a premium for avocado oil or olive oil "deserve to get what they pay for and food manufacturers deserve confidence that the ingredients they purchase from suppliers are authentic."[13]

19. The UC Davis findings and the subsequent media coverage, occurring weeks after Plaintiff's July 22, 2026, purchase and weeks before the filing of this Complaint, gave Defendant, a sophisticated and publicly traded manufacturer, further and repeated notice of the industry-wide adulteration problem described below. Defendant did not withdraw or qualify the Avocado Oil Representation or the "Real Standards" claims in response to the study or the media coverage; on information and belief, Defendant has continued to sell the Products under those same representations.

**E. The Avocado Oil Representation Is Material to Consumers**

20. The Avocado Oil Representation is material. It is important to consumers with respect to their decision to purchase the Products, and Defendant knows it. Avocado oil is widely understood to be one of the healthiest food oils. Published research has indicated that compounds in avocado oil may help protect the liver, may lower blood pressure and LDL cholesterol, and may reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels. Avocado oil is high in monounsaturated fat, which is generally considered more heart-healthy than saturated fat, and is somewhat more stable than the polyunsaturated fats typically found in conventional vegetable oils. Avocado oil is also in high demand because it has among the highest smoke points of the plant-based food oils, which makes it desirable for high-heat applications such as frying.[14]

---

[13]UC Davis, supra note 2; Chartier, supra note 2.

[14]See Healthline, Evidence-Based Health Benefits of Avocado Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits; MasterClass, What Is Avocado Oil? A Guide to Cooking With Avocado Oil, https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil.

21. Avocado oil is a premium product that commands a substantially higher price than conventional vegetable oils such as canola, corn, peanut, safflower, soybean, and sunflower oil. Plaintiff paid $18.69 per unit for the Products at Costco, as reflected in the receipt attached as Exhibit A, approximately two to three times the price of standard potato chips made with conventional oils. This premium pricing would be unjustifiable if the Products did not actually contain the avocado oil advertised.

22. The premium is not a function of package size, ingredients other than the cooking oil, or any other feature of the Product. On information and belief, Defendant's own Boulder Canyon Honey Barbeque Kettle Style Potato Chips, made from a disclosed and undisputed blend of sunflower and safflower oil, are sold in comparable package sizes, through the same retail channels, including Costco, at a materially lower price per ounce than the Avocado Oil Potato Chips. That difference is attributable to the Avocado Oil Representation itself, not to any other distinguishing characteristic of the Products.

23. Materiality does not depend on whether a given consumer believes avocado oil is superior to other oils. Whether the oil in a food product is the oil the label says it is, rather than a cheaper oil substituted for it, is material to reasonable consumers standing alone. Consumers may be allergic to, or may have religious, dietary, medical, or other reasons for not consuming, particular oils. The UC Davis researchers made the same observation: because every product they studied declared only a single edible oil in the ingredient statement and did not disclose any blended oil formulation, consumers would reasonably expect the named oil to be the primary lipid source of the product, particularly where the claim is emphasized on the front of the package.

24. Consumers purchased, and continue to purchase, the Products in part because the Avocado Oil Representation conveys the unequivocal message that the Products are made with

authentic avocado oil. Plaintiff and Class members would have paid less for the Products, or would not have purchased them at all, had they known that the Products did not conform to that representation, or that Defendant's "Real Standards" claims did not ensure that they conformed.

**F. Defendant's Knowledge of Adulteration Risk Predates Its Continued Avocado Oil Marketing**

25. The July 2026 UC Davis study is not the first to identify rampant adulteration of commercial avocado oil, and Defendant has known of that industry-wide problem for years. In June 2020, UC Davis researcher Selina Wang published a landmark peer-reviewed study in Food Control documenting that 82 percent of commercial avocado oil samples tested were either rancid, oxidized, or adulterated with cheaper oils, a study published through peer-reviewed academic channels, covered by the press, and disseminated to industry participants.[15] Defendant continued and expanded its aggressive "better-for-you" Boulder Canyon avocado oil marketing, including through an October 2020 line extension, mere months after that study's publication. The timing of that continued and expanded marketing, immediately following publication of a study showing 82 percent industry-wide adulteration, suggests either knowing exploitation of that knowledge or reckless disregard for consumer welfare.

26. A subsequent 2023 UC Davis study found that nearly 70 percent of private-label avocado oils sold at retail were rancid or adulterated with other oils, a finding likewise published through peer-reviewed and institutional channels and covered by the press.[16] Defendant nevertheless continued running aggressive national advertising for the Products, including the

[15] Hilary S. Green & Selina C. Wang, First report on quality and purity evaluations of avocado oil sold in the US, Food Control (2020), https://www.sciencedirect.com/science/article/pii/S0956713520302449.
[16] Hilary S. Green & Selina C. Wang, Purity and quality of private labelled avocado oil, Food Control (2023), https://www.sciencedirect.com/science/article/pii/S0956713523002372; Tiffany Dobbyn, Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils, UC Davis (2023), https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils.

January 2026 "Be for Real" campaign emphasizing "Real Ingredients," "Real Flavor," and "Real Standards," well within Defendant's knowledge of the industry-wide adulteration problem.

27. Defendant is a sophisticated, publicly traded commercial food manufacturer that sources, formulates, manufactures, labels, and markets the Products nationwide. Defendant knew, or reasonably should have known, of the well-documented, persistent risk that avocado oil is frequently adulterated, and Defendant nevertheless continued, and continues, to make the unqualified Avocado Oil Representation on every package of the Products it sells, without undertaking the independent, batch-level verification of incoming oil that the science available to Defendant showed was necessary to support that representation.

**G. Plaintiff's Purchases in Reliance on Defendant's Representations**

28. Plaintiff has purchased Boulder Canyon avocado oil-labeled potato chips on numerous occasions over the course of the Class Period, typically from the Costco Wholesale location nearest his home in New Orleans, Louisiana. Most recently, on July 22, 2026, at 5:06 PM, Plaintiff purchased Boulder Canyon avocado oil chips (Item #1851140) at Costco Wholesale #1147, located at 2900 Dublin Street, New Orleans, Louisiana 70118, for $18.69. The original receipt from that purchase is attached as Exhibit A.

29. Plaintiff's July 22, 2026 purchase occurred eleven days after the UC Davis study identifying Boulder Canyon's Products by name was published online, but weeks before The Dallas Express reported that finding to the consuming public, and Plaintiff had no means of discovering the adulteration himself: the true composition of the oil in the Products cannot be determined by inspection, taste, or any other means available to an ordinary consumer, and can be determined only through the specialized laboratory analysis the UC Davis researchers performed. Plaintiff's purchase occurred months after Boulder Canyon's January 2026 "Be for Real"

advertising campaign, part of the same national marketing under which Defendant sold the Products and featuring "Real Ingredients," "Real Flavor," and "Real Standards." Plaintiff relied on the Avocado Oil Representation on the front and back of the package, which carried the same message directly to him at the point of sale. Plaintiff paid a comparable premium on each of his prior purchases of the Products.

30. Had Plaintiff known, on any of these occasions, that the Products contained adulterated or substitute oils, or that the "Real Standards" claim was false, he would not have purchased them at the premium price he paid or would not have purchased them at all. Plaintiff relied on the label and packaging representations that avocado oil was the primary or sole cooking oil. He saw and read the words "Avocado Oil" on the front of the package before buying it, and he reviewed the ingredient statement, which listed avocado oil as the only oil in the Product. Plaintiff reasonably believed, based on the Avocado Oil Representation, that the oil used to make the Product was avocado oil, and he did not believe that the Product contained any other oil. Plaintiff took the Avocado Oil Representation into consideration when he decided to buy the Product.

31. As a longtime, repeat purchaser of the Products, Plaintiff will be unable to rely on the Avocado Oil Representation in the future absent independent verification that Defendant has corrected the sourcing and testing failures reflected in the July 2026 UC Davis findings. Plaintiff cannot determine the true composition of the oil in the Products absent scientific testing. Plaintiff remains interested in purchasing snack products made with avocado oil, intends to purchase such products, including the Products, in the future, and would consider purchasing Defendant's Products again if Defendant ensured that the Avocado Oil Representation was accurate and substantiated. Plaintiff accordingly faces an ongoing injury that damages alone will not remedy.

**H. Prescription and Limitations Periods Were Suspended**

32. The adulteration alleged herein is inherently self-concealing. The composition of the oil in the Products cannot be determined by inspection, taste, or any other means available to an ordinary consumer; it can be determined only through the specialized laboratory analysis of fatty acid and sterol profiles of the kind the UC Davis researchers performed. Defendant's affirmative and repeated representations that the Products are made with avocado oil and meet "Real Standards" further concealed the true facts and assured consumers, including Plaintiff, that no inquiry was necessary. Neither Plaintiff nor any reasonably diligent Class member knew, or could have known, the facts giving rise to these claims before publication of the July 2026 UC Davis study identifying Boulder Canyon's Products by name, and in any event not before the August 9, 2026, national media coverage that brought that finding to the attention of the consuming public.

33. All applicable prescriptive and limitations periods were accordingly suspended or tolled, under Louisiana's doctrine of contra non valentem and under the discovery-rule and fraudulent-concealment doctrines of the other applicable states, until July 11, 2026, at the earliest. Plaintiff's redhibition claims are timely in any event: prescription on a redhibition claim against a seller in bad faith, including a manufacturer presumed to know of the defects in the things it makes, runs one year from the day the defect was discovered. La. Civ. Code arts. 2534(B), 2545. The claims of Plaintiff and the Louisiana Subclass under the general law of sale and conventional obligations are personal actions subject to a liberative prescription of ten years. La. Civ. Code art. 3499. The one-year period applicable to claims under the Louisiana Unfair Trade Practices Act, La. R.S. 51:1409(E), is prescriptive rather than preemptive, see Miller v. Conagra, Inc., 991 So. 2d 445 (La. 2008), and was likewise suspended. Plaintiff's and the Louisiana Subclass's delictual claims for fraud and negligent misrepresentation (Counts IV, V, and VI) are subject to a two-year

liberative prescription under La. Civ. Code art. 3493.1, applicable to delictual actions arising on or after July 1, 2024; that period was likewise suspended under contra non valentem for the reasons stated above and, in any event, did not begin to run before July 11, 2026.

**CLASS ALLEGATIONS**

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following class (the "Class"):

> All persons or entities in the United States who purchased Boulder Canyon avocado oil-labeled potato chips or snack products on or after October 16, 2020, through the date of filing of this Complaint. Excluded from the Class are Defendant, its affiliates, subsidiaries, employees, officers, and directors.

35. Plaintiff additionally brings this action on behalf of the following subclass (the "Louisiana Subclass"):

> All persons or entities who purchased Boulder Canyon avocado oil-labeled potato chips or snack products in the State of Louisiana on or after October 16, 2020, through the date of filing of this Complaint.

36. Also excluded from the Class and the Louisiana Subclass are: Defendant and its parents, subsidiaries, and affiliates, and any entity in which Defendant has a controlling interest; Defendant's officers, directors, and current or former employees; all individuals who make a timely election to be excluded from this proceeding using the correct opt-out protocol; all judges assigned to hear any aspect of this litigation, together with their immediate family members; and any persons asserting claims for personal injury.

37. Plaintiff reserves the right to amend or modify the Class and Louisiana Subclass definitions before the Court determines whether class certification is appropriate, including by narrowing either definition to particular products or product lines, by adding subclasses, including subclasses defined by state of purchase, or otherwise, based on facts learned through further

investigation and discovery, including discovery into whether other Boulder Canyon avocado oil-labeled products beyond the Avocado Oil Potato Chips share the adulteration found in the Product tested by UC Davis.

38. Numerosity. The Class is so numerous that joinder of all members would be impracticable. Based on Boulder Canyon's market dominance as the number one SKU in the natural channel, its national distribution through Costco and other major retailers, and nearly six years of sales from October 2020 through the present, the Class likely comprises hundreds of thousands, if not millions, of consumers. Given the premium pricing, two to three times the price of comparable conventional-oil snacks, that Defendant's avocado oil-labeled Products command, the aggregate damages to the Class are substantial and satisfy the $5,000,000 CAFA threshold, with the precise amount to be determined through discovery of Defendant's sales data.

39. Commonality. Questions of law and fact common to the Class exist and are set forth in the following paragraph. All Class members were exposed to identical or substantially similar labeling and representations regarding avocado oil content, including Defendant's "Be for Real" and "Real Ingredients. Real Flavor. Real Standards." campaign. All suffered the same type of economic injury: overpayment for products that did not meet advertised specifications.

40. The common questions that will drive the resolution of this action, and that predominate over any questions affecting only individual Class members, include: (a) whether Defendant misrepresented material facts, or failed to disclose material facts, in connection with the packaging, marketing, distribution, and sale of the Products; (b) whether the oil used to make the Products is avocado oil; (c) whether the Avocado Oil Representation constituted false or deceptive advertising; (d) whether Defendant's "Real Standards" representations were false or misleading; (e) whether Defendant engaged in unfair, unlawful, or fraudulent business practices;

(f) whether Defendant's conduct was intentional and knowing; (g) whether the Products commanded a price premium as a result of the Avocado Oil Representation, and if so in what amount; (h) whether Plaintiff and the Class are entitled to damages, restitution, or disgorgement, and if so in what amount; (I) whether Plaintiff and the Class are entitled to injunctive relief; (j) whether Plaintiff and the Class are entitled to statutory, treble, or punitive damages, and if so in what amount; and (k) whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest, and costs of suit.

41. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights that Plaintiff seeks to enforce uniformly on behalf of the Class. The injuries sustained by Class members flow from a common nucleus of operative fact: Defendant's uniform Avocado Oil Representation and the falsity of that representation as alleged herein. Individual questions, if any, pale in comparison to the common questions presented.

42. Typicality. Plaintiff's claims are typical of those of the Class. Like all Class members, Plaintiff purchased a Boulder Canyon avocado oil-labeled product in reliance on the Avocado Oil Representation, paid a premium price, and, as alleged herein, received a product that did not conform to that representation or that was sold subject to an undisclosed, material risk of nonconformity.

43. Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and has retained experienced class action counsel.

44. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual litigation by each Class member would be prohibitively expensive and would result in inconsistent judgments. Class adjudication promotes

judicial efficiency and provides the sole practical means for Class members to vindicate their small individual claims.

45. Rule 23(b)(2). Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendant has acted, or failed to act, on grounds generally applicable to Plaintiff and the Class, which makes final injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole.

46. Ascertainability. Class members are identifiable and ascertainable through Defendant's records, retailer and distributor records, membership and loyalty program records maintained by retailers such as Costco, and other objective criteria, together with self-identification by affidavit where appropriate.

## CAUSES OF ACTION

### COUNT I: BREACH OF EXPRESS WARRANTY

**(On Behalf of Plaintiff and the Class; for Plaintiff and the Louisiana Subclass, Under La. Civ. Code art. 2529 and the Law of Conventional Obligations)**

47. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

48. By labeling its Products "Avocado Oil" and by declaring avocado oil as the sole ingredient oil in the ingredient statement, Defendant made express warranties to consumers. These representations constituted affirmations of material fact regarding the identity and composition of the cooking oil used in the Products.

49. For Class members whose purchases are governed by the law of a state that has adopted Article 2 of the Uniform Commercial Code, the Avocado Oil Representation is (a) an affirmation of fact or promise made by Defendant to consumers that the Products are made with avocado oil; (b) a representation that became part of the basis of the bargain when consumers relied

on it in deciding to purchase the Products; and (c) the creation of an express warranty that the Products would conform to that affirmation of fact or promise. In the alternative, the representation is a description of the goods that was made part of the basis of the bargain and that created an express warranty that the Products would conform to that description. See U.C.C. § 2-313, as enacted in the applicable states of purchase.

50. For Plaintiff and the Louisiana Subclass, Louisiana law, not the Uniform Commercial Code, governs. When the thing delivered is free of redhibitory defects but is not of the kind or quality represented by the seller, the buyer's rights are governed by the general rules of sale and conventional obligations rather than by redhibition. La. Civ. Code art. 2529. Plaintiff and the Louisiana Subclass accordingly plead this express warranty theory under La. Civ. Code art. 2529 and ordinary contract principles, as a claim independent of, and in the alternative to, the redhibition claim set forth in Count II below.

51. To the extent the law of any applicable state conditions recovery for breach of express warranty on pre-suit notice, see, e.g., U.C.C. § 2-607(3)(a), that condition is satisfied or excused: Defendant received actual notice of the nonconformity of its Products no later than July 2026, when the UC Davis study publicly identified the Products by name; Defendant received further notice through the August 9, 2026 national media coverage of that finding; pre-suit notice by retail consumer purchasers is excused or relaxed under the law of many states; further notice would have been futile in light of Defendant's continued sale of the Products under the same representations after that coverage; and this Complaint itself provides notice.

52. Plaintiff and Class members reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to them. These representations

appeared on product labels, packaging, and marketing materials, and constituted the basis of the bargain between Defendant and consumers.

53. Defendant breached these express warranties. The Boulder Canyon Avocado Oil Potato Chips purchased by Plaintiff is the very product independently tested by UC Davis, and both tested lots of that product contained oil compositionally inconsistent with authentic avocado oil.

54. Plaintiff and Class members were injured by Defendant's breach of express warranty. They paid premium prices for products that did not conform to Defendant's express representations regarding oil composition.

**COUNT II: REDHIBITION (LA. CIV. CODE ARTS. 2520–2548)**

**(On Behalf of Plaintiff and the Louisiana Subclass)**

55. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

56. Louisiana law implies a warranty against redhibitory defects, or vices, in every sale of a movable. La. Civ. Code art. 2520. A defect is redhibitory when it renders the thing sold either useless, or its use so inconvenient or imperfect, that it must be presumed a buyer would not have bought the thing had he known of the defect, or when it diminishes the thing's usefulness or value such that a buyer would still have bought it, but for a lesser price. La. Civ. Code arts. 2520–2521. Defendant is the manufacturer of the Products, which are sold to consumers, including Plaintiff and the Louisiana Subclass, through retailers such as Costco.

57. The Products suffer from a redhibitory defect. Defendant represents on the front and back of every package that the Products are made with avocado oil and lists avocado oil as the sole oil ingredient. In fact, independent laboratory testing has shown that the Products contain oil

that is adulterated, diluted, or substituted with cheaper vegetable or seed oils inconsistent with that representation. A reasonable buyer who knew these facts would not have purchased the Products or would have purchased them only at a substantially reduced price. The defect was not discoverable by simple inspection, since the true composition of the oil can be determined only through laboratory analysis of the kind performed by the UC Davis researchers. La. Civ. Code arts. 2521, 2530.

58. As the manufacturer of the Products, Defendant is presumed to know of the redhibitory defect described herein. La. Civ. Code art. 2545. A manufacturer is deemed to know of the defects in the things it makes and is therefore liable to the buyer for the return of the price, with interest from the time it was paid, for reimbursement of the reasonable expenses occasioned by the sale, and for damages and reasonable attorney fees. Id. In the alternative, even a good faith seller unaware of the defect is bound to repair, remedy, or correct the defect, or, if that cannot be done, to restore the price with interest, or to reduce the price. La. Civ. Code art. 2531.

59. Plaintiff and the Louisiana Subclass are entitled to a reduction of the purchase price paid for the Products (quanti minoris), or, in the alternative, rescission of the sale and return of the purchase price, together with interest, reasonable expenses occasioned by the sale, damages, and reasonable attorney fees, pursuant to La. Civ. Code art. 2545. Notice is unnecessary here in any event: article 2522's final sentence excuses a buyer's failure to give notice of a defect where the seller had actual knowledge of it, and a manufacturer, such as Defendant, is conclusively presumed to have that knowledge. La. Civ. Code art. 2545. To the extent formal pre-suit notice is nonetheless required, this action itself constitutes such notice, and additional notice would in any event have been futile in light of Defendant's continued marketing of the Products as containing avocado oil after the July 2026 UC Davis findings and the resulting August 9, 2026, national media coverage.

And because the Products are consumable foodstuffs, no repair of the defect was possible, so the only consequence article 2522 attaches to a failure of notice, diminution of the warranty to the extent the defect could have been repaired, can have no application here.

**COUNT III: VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES ACT, LA. R.S. 51:1401, ET SEQ.**

**(By Plaintiff Individually and, in the Alternative, on Behalf of the Louisiana Subclass)**

60. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

61. The Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, et seq., prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. La. R.S. 51:1405. Defendant's conduct as alleged herein offends established public policy and is unethical, oppressive, unscrupulous, and substantially injurious to consumers.

62. Defendant's labeling and marketing of the Products violated LUTPA by: (a) representing that the Products contained avocado oil when independent testing showed the Products contained adulterated or substituted oils in both lots tested; (b) representing that the Products met "Real Standards" when they did not; (c) creating a false impression regarding the quality, origin, and composition of the Products; and (d) omitting material facts about the composition of the Products that a reasonable consumer would consider important in deciding whether to purchase. These acts and omissions occurred in connection with Plaintiff's purchases in Louisiana and Louisiana Subclass members' purchases in Louisiana.

63. Defendant's unfair and deceptive acts and practices were directed at consumers and affected the consumer decision-making process. The deceptive labeling, the "Be for Real" and "Real Ingredients. Real Flavor. Real Standards." marketing campaign, and premium pricing

directly induced the purchases of Plaintiff and Louisiana Subclass members, who suffered an ascertainable loss of money as a result: the price, or price premium, they paid for Products that did not conform, or could not be counted on to conform, to the composition represented.

64. La. R.S. 51:1409(A) provides that a private person may bring an action "individually but not in a representative capacity." Plaintiff therefore asserts this Count in his individual capacity. In the alternative, and solely to the extent that Federal Rule of Civil Procedure 23 governs the availability of class treatment in this Court notwithstanding section 1409(A), see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010), Plaintiff asserts this Count on behalf of the Louisiana Subclass.

65. Under La. R.S. 51:1409(A), Plaintiff is entitled to recover his actual damages, together with reasonable attorney fees and costs. Should Defendant be found to have knowingly used the unfair or deceptive methods, acts, or practices described herein after being put on notice by the Louisiana Attorney General, Plaintiff will additionally be entitled to an award of three times the actual damages sustained, and Plaintiff seeks treble damages to the full extent that statutory predicate is or becomes satisfied.

66. As alleged above, the one-year period of La. R.S. 51:1409(E) is prescriptive, not preemptive, and was suspended by contra non valentem until publication of the July 2026 UC Davis study, and in any event until the August 9, 2026, national media coverage of its findings.

**COUNT IV: FRAUDULENT MISREPRESENTATION**

**(On Behalf of Plaintiff and the Class)**

67. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

68. Defendant made a material representation in the name and labeling of the Products, that the Products were made with avocado oil, reinforced by Defendant's broader public "Real Standards" marketing message. That representation was false as to the Products Plaintiff purchased, which were among the products independently tested by UC Davis and found compositionally inconsistent with authentic avocado oil in both lots examined.

69. Defendant knew, or at minimum recklessly disregarded, that this representation was false or misleading. The 2020 and 2023 UC Davis studies documenting widespread adulteration in the avocado oil marketplace were published through peer-reviewed and industry channels well before the conduct alleged herein, and Defendant, a sophisticated and publicly traded manufacturer that sources, formulates, and markets the Products nationwide, continued and expanded its Boulder Canyon avocado oil marketing, including through an October 2020 line extension and a January 2026 national "Real Standards" advertising campaign, throughout that period. When the July 2026 UC Davis study identified Defendant's Products by name as failing authenticity testing in both tested lots, and when The Dallas Express reported that finding nationally on August 9, 2026, Defendant did not withdraw or qualify the Avocado Oil Representation; on information and belief, it continued to sell the Products under the identical, unqualified representation. Defendant's conduct constitutes, at minimum, reckless disregard for the truth of its representation.

70. Defendant intended for consumers to rely on these representations, or at minimum, knew that consumers would foreseeably rely on them in making purchasing decisions.

71. Plaintiff and Class members reasonably relied on Defendant's representation that the Products contained avocado oil. Plaintiff would not have purchased the Products at the premium prices he paid had he known that they did not conform to that representation.

72. Plaintiff's and Class members' reliance was reasonable and justifiable. The true composition of the oil in the Products could not be ascertained without specialized laboratory analysis and could not have been discovered by consumers without difficulty, inconvenience, or special skill.

73. Plaintiff and Class members suffered damages as a direct and proximate result of their reliance on Defendant's misrepresentations. Plaintiff paid $18.69 per unit for the Products, and a comparable premium on each of his prior purchases, for products he would not have purchased, or would have purchased only at significantly lower prices, had he known the truth.

**COUNT V: FRAUD IN THE INDUCEMENT: RESCISSION, DAMAGES, AND ATTORNEY FEES (LA. CIV. CODE ARTS. 1948, 1953, 1955, 1958)**

**(On Behalf of Plaintiff and the Louisiana Subclass)**

74. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

75. Under Louisiana law, consent to a contract may be vitiated by fraud. La. Civ. Code art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. Civ. Code art. 1953.

76. Each purchase of a Product by Plaintiff or a Louisiana Subclass member was a contract of sale, and the purchaser's consent to that contract was procured by Defendant's misrepresentation that the Product contained avocado oil, and by Defendant's suppression of the truth regarding the composition of the oil used in the Products. Defendant made these misrepresentations and suppressions with the intention of obtaining an unjust advantage: the premium price that the Avocado Oil Representation commands.

77. The fraud concerned circumstances that substantially influenced consent. The identity of the cooking oil was the very attribute for which Plaintiff and Louisiana Subclass members paid a premium. La. Civ. Code art. 1955.

78. The exception of La. Civ. Code art. 1954 does not apply. The truth about the composition of the oil in the Products could not have been ascertained without difficulty, inconvenience, or special skill, because it is determinable only through specialized laboratory analysis; and the reliance of Plaintiff and Louisiana Subclass members on Defendant's Avocado Oil Representation was reasonably induced by that assertion.

79. A contract whose formation is vitiated by fraud is relatively null. La. Civ. Code art. 2031. Upon annulment, the parties are restored to the situation that existed before the contract was made. La. Civ. Code art. 2033. Plaintiff and the Louisiana Subclass are accordingly entitled to rescission of their purchases and restoration of the price with interest; and because rescission is sought on account of fraud, Defendant is liable for damages and attorney fees. La. Civ. Code art. 1958. This Count is pleaded in the alternative to Plaintiff's claims for damages to the extent the law requires an election.

**COUNT VI: NEGLIGENT MISREPRESENTATION (LA. CIV. CODE ARTS. 2315, 2316)**

**(In the Alternative, on Behalf of Plaintiff and the Louisiana Subclass)**

80. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

81. In the alternative to Count IV, and without conceding that Defendant's conduct was anything less than knowing or reckless, Plaintiff alleges that Defendant negligently misrepresented the composition of the Products.

82. As the manufacturer, labeler, and marketer of the Products, Defendant had a legal duty, in the course of selling the Products to consumers, to supply correct information on its labels and in its marketing, and to exercise reasonable care in making representations about the composition of its Products, upon which Defendant knew consumers would rely.

83. Defendant breached that duty by representing the Products as "Avocado Oil" without exercising reasonable care to verify that representation, including by failing to implement independent, batch-level testing adequate to detect the adulteration documented across the industry since 2020 and detected in every tested lot of Defendant's own Product in 2026.

84. Plaintiff and Louisiana Subclass members justifiably relied on those representations and sustained pecuniary loss, in the form of the price and price premium paid, as a direct and proximate result of Defendant's breach. La. Civ. Code arts. 2315, 2316.

**COUNT VII: UNJUST ENRICHMENT**

**(In the Alternative, on Behalf of Class Members Who Purchased Outside Louisiana, Under the Laws of Their States of Purchase)**

85. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

86. This Count is pleaded solely in the alternative, pursuant to Federal Rule of Civil Procedure 8(d)(2), and solely on behalf of Class members whose purchases were made outside Louisiana, under the unjust enrichment or restitution law of their respective states of purchase. Because Louisiana law makes the action for enrichment without cause subsidiary to other available remedies, La. Civ. Code art. 2298, this Count is not asserted on behalf of Plaintiff or the Louisiana Subclass.

87. Class members who purchased outside Louisiana conferred a benefit upon Defendant by paying premium prices for Products they believed to be made with avocado oil. Defendant received and retained those payments.

88. Defendant's retention of those benefits would be unjust and inequitable, because the payments were obtained through the false or misleading Avocado Oil Representation and "Real Standards" claims alleged herein, and because the Products delivered did not conform, or could not be counted on to conform, to what was promised.

89. To the extent required by the law of any applicable state, the Class members on whose behalf this Count is brought lack an adequate remedy at law or assert this Count in the alternative to their legal claims as that state's law permits.

90. Such Class members are entitled to restitution and disgorgement of the unjust profits and benefits Defendant obtained from them.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims in this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Arthur Hunter, on behalf of himself and all members of the Class, respectfully requests that this Court:

1. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3);

2. Appoint Plaintiff Arthur Hunter as representative of the Class and his counsel as Class Counsel;

3. Enter judgment against Defendant in favor of Plaintiff and the Class for all damages sustained, including but not limited to the premium price paid for the Products;

4. Enter a declaration that Defendant's actions, as described herein, violate the laws described herein;

5. Enter a finding in favor of Plaintiff and the Class against Defendant on all counts asserted herein;

6. Award Plaintiff and the Class restitution and other equitable relief, including without limitation rescission of Plaintiff's and Louisiana Subclass members' purchases with restoration of the purchase price and interest, and restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class as a result of the unlawful, unfair, and deceptive business practices described herein;

7. Award nominal damages;

8. Award punitive or exemplary damages and statutory damages under the laws of those states that authorize such awards, and pursuant only to those causes of action so permitting;

9. Award treble damages pursuant to La. R.S. 51:1409(A) to the extent the statutory conditions for such an award are satisfied;

10. Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest rate permitted by law;

11. Award Plaintiff and the Class reasonable attorney fees and litigation costs, including pursuant to La. Civ. Code arts. 1958 and 2545 and La. R.S. 51:1409(A);

12. Award costs of administering the Class relief;

13. Impose an injunction requiring Defendant to: (a) cease representing the Products as made with "Avocado Oil" or as meeting "Real Standards" unless and until Defendant can

substantiate those representations through independent third-party testing; (b) disclose the true composition and identity of cooking oils used in the Products; (c) implement independent third-party laboratory testing to verify avocado oil authenticity prior to sale, rather than relying solely on suppliers' certificates of analysis; and (d) engage in corrective advertising to notify Class members of the adulteration findings described herein;

14. Enter an order prohibiting Defendant from making the Avocado Oil Representation on the Products unless and until the Products are in fact made with avocado oil consistent with that representation, as verified through independent third-party laboratory testing; and

15. Award such other and further relief as this Court deems just, proper, and equitable under the circumstances.

Respectfully Submitted,

DALY & BLACK, P.C.

*/s/ Blake Corley*

Blake E. Corley, LSBA #39848, Lead Counsel
Richard G. Perque, LSBA #30669
400 Poydras St., Ste. 1900
New Orleans, LA 70130
www.dalyblack.com
Phone: (504) 800-8508
Fax: (713) 655-1587
bcorley@dalyblack.com
rperque@dalyblack.com
*Counsel for Plaintiff, Individually and on Behalf of All Others Similarly Situated*